UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN SOTOODEH,<br><br>    Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>    Defendant. | Case No. 22-cv-00950-DMR<br><br>**ORDER ON CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 44, 46 |

Plaintiff John Sotoodeh filed this lawsuit against his former employer, Wells Fargo Bank, N.A. ("Wells Fargo"), alleging claims for wrongful termination, unlawful retaliation, and breach of contract. The court granted the parties' request to bifurcate discovery to first address Wells Fargo's preemption defense based on the National Banking Act ("NBA"), 12 U.S.C. § 24, and to file early dispositive motions on that issue. The parties timely filed cross motions for partial summary judgment on preemption. [Docket Nos. 44 (Def.'s Mot.), 46 (Pl.'s Mot.).] The court held a hearing on December 7, 2023. For the following reasons, Sotoodeh's motion for partial summary judgment is granted. Wells Fargo's motion is denied.

## I.     BACKGROUND AND PROCEDURAL HISTORY[1]

The following facts are undisputed.[2] Sotoodeh started working for Wells Fargo in 1990 as a bank teller. He worked his way up and received multiple promotions, including a promotion in 2006 to Regional President for Southern California, in which he was responsible for oversight of approximately 120 bank branches. Sotoodeh Decl. ¶ 2-4. In 2009, he made a lateral move to manage the Greater Los Angeles markets. His region expanded over time and he was promoted to Regional Bank Executive in 2014, "responsible for branch banking and business banking for the Southwest region." *Id*. at ¶ 4. He held that position until early 2017. *Id*. at ¶ 5.

Mary Mack became the head of Wells Fargo's Community Bank in fall 2016. Mack Dep. 70. Mack subsequently reorganized the Community Bank, reducing the number of her direct reports from three to two. One of Mack's two direct reports was Lisa Stevens. *Id*. at 63, 74. In April 2017, Stevens appointed Sotoodeh as Lead Regional President of the Mountain Midwest Region. Sotoodeh Decl. ¶ 5; Mack Dep. 62-63, 73-76.

The Los Angeles Times published an article in 2013 regarding Wells Fargo's retail banking sales practices. The bank came under scrutiny for alleged sales misconduct in Southern California and elsewhere, including the time period during which Sotoodeh was responsible for Los Angeles. Moreshead Decl. ¶ 5, Ex. 4. Starting in late 2016, Shearman & Sterling LLP investigated Wells Fargo's sales practices on behalf of the Independent Directors of Wells Fargo & Company ("WFC"), which is the holding company of Wells Fargo Bank, N.A. ("Wells Fargo").

---

[1] Sotoodeh filed an amended opposition to Wells Fargo's motion on September 18, 2023 that included 19 objections to evidence, stating that "[f]ull explanatory grounds and citations to supporting evidence" for the objections are set out in a separate document. [Docket No. 51 (Pl.'s Opp'n) 13-15 & n.8.] The separate document consists of a 17-page chart with detailed argument and supporting authority for each objection. [Docket No. 51-1.] Shortly before the hearing Sotoodeh withdrew several of his objections. [Docket Nos. 64, 66.] The court declines to consider the separately-filed chart as it was filed in violation of Civil Local Rule 7-3(a), which provides that "[a]ny evidentiary and procedural objections to [a] motion must be contained within the brief or memorandum" in opposition thereto. In any event, the court denies Sotoodeh's objections to Wells Fargo's evidence as moot because it does not rely on any of the challenged evidence in deciding these motions.

Wells Fargo objected to certain paragraphs in Sotoodeh's declaration. [Docket No. 50 (Def.'s Opp'n) 2 n.2.] The objections are denied as moot because the court does not rely on the challenged paragraphs in deciding these motions.

[2] The court discusses additional facts below where relevant to its analysis.

2

Shearman & Sterling LLP later drafted a "Board Report" that detailed the investigation and its findings. The Board Report became public in April 2017 and mentioned Sotoodeh by name. Parker Decl. ¶¶ 3-4; Moreshead Decl. ¶ 6, Ex. 5 (Board Report 23-24).

C. Allen Parker joined Wells Fargo as its General Counsel in March 2017. In mid-2017, Parker began personally reviewing Sotoodeh's "employment status with Wells Fargo as well as his past conduct with respect to sales practices." Parker Decl. ¶¶ 2, 5. Parker eventually concluded that "it was in Wells Fargo's best interest to terminate [Sotoodeh's] employment" and decided to recommend to Mack that she terminate Sotoodeh. *Id.* at ¶¶ 6, 7. After Parker informed Mack of his recommendation, Mack states she "made the decision to terminate [Sotoodeh] and shared with [Parker] that that's the action we would be taking." Mack Dep. 46; Parker Decl. ¶ 12. In mid-November 2017, Sotoodeh was informed that his employment was terminated. Sotoodeh Decl. ¶ 6; Parker Decl. ¶ 13.[3]

In August 2021, Sotoodeh filed a lawsuit in state court asserting three claims for relief: 1) retaliation in violation of California Labor Code section 1102.5; 2) wrongful termination in violation of public policy; and 3) breach of contract. [Docket No. 1-1.] In its answer, Wells Fargo asserted preemption by the National Bank Act, 12 U.S.C. § 24, among other affirmative defenses. [Docket No. 1-5.] Wells Fargo removed the case to this court in February 2022. [Docket No. 1.] At the initial case management conference, the court granted the parties' request to conduct discovery in phases, with phase one addressing NBA preemption so that Wells Fargo could file an early dispositive motion solely on that issue. [Docket No. 27.] The court extended the phase one discovery and dispositive motion deadline three times at the parties' request. [Docket Nos. 31, 39, 42.] The parties timely filed their motions on NBA preemption.

## II. REQUEST FOR JUDICIAL NOTICE

Sotoodeh filed an unopposed request for judicial notice ("RJN") in which he asks the court

---

[3] Sotoodeh alleges that he was terminated shortly before he was scheduled to meet with the Securities and Exchange Commission, the Department of Justice, and the FBI, and that his termination was in retaliation for whistleblowing and opposing sales practices that resulted in unlawful conduct. *See* Compl. ¶¶ 15, 17, 61, 65. The merits of these claims are not before the court at this time.

3

1  to take judicial notice of his complaint, amended complaint, Wells Fargo's answer and notice of
2  removal, and the parties' May 11, 2022 joint Rule 26(f) report. [Docket No. 47 (RJN) Exs. A-E.]
3  The request is denied as moot as to these exhibits; they are filed on the court's docket and are
4  already part of the record in this case. [*See* Docket Nos. 1 (Notice of Removal Exs. A, B, E), 24.]
5        Sotoodeh also asks the court to take judicial notice of the South Dakota Business
6  Corporations Act, S.D. Codified Laws § 47-1A-824 (2014), "Quorum and Voting." RJN Ex. F.
7  Federal Rule of Evidence 201 permits a court to take judicial notice of a fact that is not subject to
8  reasonable dispute if it "is generally known within the trial court's territorial jurisdiction" or "can
9  be accurately and readily determined from sources whose accuracy cannot reasonably be
10 questioned." Fed. R. Evid. 201(b). However, Rule 201 "governs judicial notice of an adjudicative
11 fact only, not a legislative fact." Fed. R. Evid. 201(a). As the Advisory Committee Notes to Rule
12 201(a) explain, "[a]djudicative facts are simply the facts of the particular case. Legislative facts,
13 on the other hand, are those which have relevance to legal reasoning and the lawmaking process,
14 whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of
15 a legislative body." *See* Fed. R. Evid. 201 (Advisory Committee Notes for subdivision (a), 1972
16 proposed rules). Here, the South Dakota statute is a "legislative fact" rather than an "adjudicative
17 fact." It is not appropriate for judicial notice as the court considers legal authorities as part of its
18 analysis. *See, e.g., Lemieux v. Cwalt, Inc.*, No. CV 15-77-BU-JCL, 2017 WL 365481, at *1 (D.
19 Mont. Jan. 25, 2017) (denying request for judicial notice of federal and state statutes, regulations,
20 and published court decisions on the ground that they are "legislative facts," collecting cases).
21 The RJN is denied.

**III.     LEGAL STANDARD**

23       A court shall grant summary judgment "if . . . there is no genuine dispute as to any material
24 fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden
25 of establishing the absence of a genuine issue of material fact lies with the moving party.
26 *Devereaux v. Abbey*, 263 F.3d 1070, 1079 (9th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477
27 U.S. 317, 323 (1986)). The court must view the evidence in the light most favorable to the non-
28 moving party. *Fresno Motors, LCC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir.

4

1  2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A genuine factual issue
2  exists if sufficient evidence favors the non-movant such that "a reasonable [judge or] jury could
3  return a verdict for the nonmoving party. *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200
4  F.3d 1223, 1229 (9th Cir. 2000) (alteration in original) (quoting *Anderson*, 477 U.S. at 248). The
5  court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact.
6  *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting *Anderson*,
7  477 U.S. at 255).

8      To defeat summary judgment once the moving party has met its burden, the nonmoving
9  party may not simply rely on the pleadings, but must point to specific facts, by affidavit or as
10 otherwise provided by Federal Rule of Civil Procedure 56, showing that a genuine issue of
11 material fact exists. *Devereaux*, 263 F.3d at 1076. More than a "scintilla of evidence" must exist
12 to support the non-moving party's claims. *Pomona*, 750 F.3d at 1049 (quoting *Anderson*, 477
13 U.S. at 252). A showing that "there is some 'metaphysical doubt' as to the material facts as issue"
14 will not suffice. *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (quoting
15 *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "Where the
16 record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there
17 is no genuine issue for trial." *Pomona*, 750 F.3d at 1049-50 (quoting *Matsushita*, 475 U.S. at
18 587).

19     Where, as here, the parties have filed cross-motions for summary judgment, "each motion
20 must be considered on its own merits." *Fair Hous. Council of Riverside Cty., Inc. v. Riverside*
21 *Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (quotation omitted). "In fulfilling its duty to review
22 each cross-motion separately, the court must review the evidence submitted in support of each
23 cross-motion." *Id*.

24 **IV.  DISCUSSION**

25     Wells Fargo moves for partial summary judgment on Sotoodeh's claims for retaliation and
26 wrongful termination. It contends they are preempted by the NBA's "dismiss-at-pleasure"
27 provision, 12 U.S.C. § 24 (Fifth) ("Paragraph Fifth"). Sotoodeh cross-moves for summary
28 judgment on preemption, arguing that Wells Fargo cannot establish the defense as a matter of law.

1    The NBA gives a national banking association the power "[t]o elect or appoint directors,
2    and by its board of directors to appoint a president, vice president, cashier, and other officers,
3    define their duties, require bonds of them and fix the penalty thereof, *dismiss such officers or any*
4    *of them at pleasure*, and appoint others to fill their places." 12 U.S.C. § 24 (Fifth) ("Paragraph
5    Fifth") (emphasis added). This provision "preempts all state law causes of action by a bank
6    officer for breach of an employment agreement." *Wells Fargo Bank v. Superior Court*, 53 Cal. 3d
7    1082, 1088 (1991) (citing *Mackey v. Pioneer Nat. Bank*, 867 F.2d 520, 526 (9th Cir. 1989)). The
8    Ninth Circuit has explained that the purpose of the "at-pleasure dismissal" provision is to give
9    national banking associations "the greatest latitude possible to hire and fire their chief operating
10   officers, in order to maintain the public trust." *Mackey*, 867 F.2d at 526.

11   The parties agree that to establish NBA preemption, Wells Fargo must show 1) it is a
12   national banking association; 2) Sotoodeh was an "officer" as defined by the NBA; 3) he was
13   appointed by Wells Fargo's Board of Directors; and 4) he was "dismissed by the bank's board of
14   directors itself or the discharge was approved or ratified by the board." *See Wells Fargo*, 53 Cal.
15   3d at 1103; *Mackey*, 867 F.2d at 525. The parties agree that Wells Fargo meets the first two
16   elements of the NBA preemption test. *See* Pl.'s Opp'n 7. They dispute the third and fourth
17   elements, i.e., whether Sotoodeh's appointment and termination fall within the NBA's at-pleasure
18   dismissal provision.

19   With respect to the third element, Wells Fargo contends that Sotoodeh was appointed to
20   the officer position he held at the time of his termination pursuant to authority delegated by the
21   Board of Directors through Wells Fargo's bylaws. Def.'s Mot. 12, 16. Sotoodeh responds with
22   two arguments. First, he argues that the NBA "does not expressly permit" the Board to delegate
23   the authority to appoint officers for purposes of the at-pleasure dismissal provision. Pl.'s Opp'n
24   16. Second, he contends that even if the NBA permits a board of directors to delegate
25   appointment authority, Wells Fargo failed to show that Sotoodeh was appointed as an officer in
26   conformity with its bylaws. *Id*. at 17-19; Pl.'s Mot. 27-28.

27   Sotoodeh's first argument is meritless. The NBA expressly gives a national banking
28   association the authority "[t]o prescribe, by its board of directors, bylaws not inconsistent with

6

United States District Court
Northern District of California

1   law, regulating the manner in which . . . its officers [are] appointed[.]" 12 U.S.C. § 24 (Sixth)

2   ("Paragraph Sixth"). Both the Ninth Circuit and California Supreme Court have interpreted the

3   NBA as permitting a board of directors to delegate its appointment powers. In *Mackey*, the Ninth

4   Circuit held that the NBA's at-pleasure dismissal provision "requires only that the board hire bank

5   officers either directly or *indirectly through delegation*." 867 F.2d at 525 (emphasis added)

6   (plaintiff "was an officer hired indirectly by the Board of Directors and thus could be terminated at

7   will"); *Poching v. Hometown Nat'l Bank, N.A.*, No. SACV 15-01805-CJC(KESx), 2016 WL

8   11744210, at *4 (C.D. Cal. June 15, 2016) ("*Mackey* holds that officers can be dismissed under

9   the NBA so long as they were 'hired indirectly by the Board of Directors'"). In *Wells Fargo*, the

10  California Supreme Court held that Paragraph Sixth "allows bylaws to regulate the manner in

11  which 'officers [are] appointed.'" 53 Cal. 3d at 1096 (alteration in original; emphasis removed);

12  *see also Mahoney v. Crocker Nat. Bank*, 571 F. Supp. 287, 290 (N.D. Cal. 1983) (holding that

13  where plaintiffs "were appointed in accordance with [bank's] bylaws" they were "officers of [the

14  bank] and so subject to the provisions of the National Bank Act regarding officers").

15          Sotoodeh's second argument is that Wells Fargo failed to establish that he was appointed

16  as an officer in conformity with its bylaws. At the hearing, Wells Fargo confirmed that it relies on

17  Section 4.1, which governs appointments and provides that the Board "shall appoint a President,

18  one or more Vice Presidents and a Secretary and may appoint . . . such other officers as from time

19  to time may appear to the Board to be required or desirable to transact the business of the

20  Association." Moreshead Decl. ¶ 12, Ex. 11 (Bylaws § 4.1 "Appointment of Officers"). That

21  bylaw also states that "[a]ny officer designated by the Director of Human Resources as the head of

22  a business or staff group may appoint officers at the rank of Senior Vice President, Managing

23  Director or below, and any such designated officer may delegate this authority to another officer."

24  *Id*.

25          Wells Fargo argues that Sotoodeh "was hired through delegation authorized by [its] Board

26  of Directors" because Section 4.1 "permitted the heads of business to hire (or to authorize

27  subordinates to hire) officers such as him within the pertinent line of business." Def.'s Mot. 12.

28  In support, it cites Mack's deposition. She testified that Stevens, who was "one of two leaders

7

reporting to [Mack] who ran the branch banking network across the country," 1) appointed Sotoodeh as Lead Regional President, the position he held at the time of his termination; 2) had authority to appoint Sotoodeh to that position "through the HR policies that . . . would have given her the authority to hire for her region or for her market"; and 3) made the decision to appoint Sotoodeh to that position. Def.'s Mot. 8, 12 (citing Mack Dep. 62-63, 75-76).

Wells Fargo's position is not supported by the record. The evidence does not establish that Sotoodeh was appointed as an officer in conformance with the bylaws. The plain language of Section 4.1 requires Wells Fargo to show that 1) an officer "designated by the Director of Human Resources as the head of a business or staff group" 2) "delegate[d] [the] authority" to appoint officers "to another officer." As to the first requirement, Mack testified that she was appointed to the position of head of community banking by CEO Tim Sloan in 2016. Mack Dep. 70. On April 25, 2017, the Board elected her as Senior Executive Vice President (Community Banking). Moreshead Decl. ¶ 7, Ex. 6 (Apr. 25, 2017 Board meeting minutes 13). This does not amount to evidence that the Director of Human Resources designated Mack as the "head of a business or staff group" in accordance with the first requirement of Section 4.1.

As to the second requirement, there is no evidence that Stevens appointed Sotoodeh to his position via authority delegated to her by Mack. In her deposition, counsel asked Mack, "[d]o you know if Ms. Stevens was ever given the authority, by anyone, including yourself, to appoint Mr. Sotoodeh into the position that he was in at the time of his termination?" Mack did not testify that she delegated authority to Stevens to appoint Sotoodeh. Instead, she pointed to HR policies: "[Stevens] would have the authority through the HR policies that give her—would have given her the authority to hire for her region or for her market." Mack Dep. 63, 65 ("we have a series of policies and practices that—for managers to use in hiring decisions and the ability to hire . . . it's in a collection of HR policies and procedures."). Wells Fargo did not submit HR policies or procedures to support Mack on this point.

Mack did not recall whether Stevens asked for permission to appoint Sotoodeh to that position. *Id.* at 67. Rather, Stevens *informed* Mack of her decision to appoint Sotoodeh as Lead Regional President. *Id.* Wells Fargo did not submit HR policies, other company documents, or

other evidence supporting its claim that Mack delegated authority to Stevens to appoint Sotoodeh Lead Regional President to show that the appointment was in accordance the second requirement of Section 4.1.

At the hearing, Wells Fargo argued that the bylaws themselves delegated to Stevens the authority to appoint officers. Not so. Section 4.1 states that "the head of a business or staff group may appoint officers at the rank of Senior Vice President, Managing Director or below, and any such designated officer *may delegate this authority to another officer*." The plain language of the bylaw identifies the designated officers vested with the power to delegate appointment authority; the bylaw does not accomplish the delegation itself.

Finally, Wells Fargo argues that the Board "implicitly ratified" Sotoodeh's hiring because Sotoodeh served as Lead Regional President "with full visibility to the bank and its Board." Def.'s Mot. 16. In support, it cites a footnote in *Mackey* in which the court held that even though the record did not "provide affirmative support for concluding that the board ratified Mackey's hiring, it can be inferred from his two-year service as Vice President, and later as Executive Vice President, that he was confirmed in these positions. Other such appointments were routinely confirmed . . . and undoubtedly so was Mackey's." 867 F.2d at 525 n.2. This footnote does not support Wells Fargo's position because there is no record evidence that its Board "routinely confirmed" officer appointments such that it would be appropriate to infer such confirmation here, particularly since all inferences must be drawn in favor of Sotoodeh in connection with Wells Fargo's motion for partial summary judgment. In reviewing Sotoodeh's motion for partial summary judgment, the court must draw all inferences in Wells Fargo's favor, but Wells Fargo did not submit any evidence supporting an inference that the Board implicitly ratified Sotoodeh's hiring.

In sum, Wells Fargo failed to submit evidence supporting its claim that Sotoodeh was an officer hired "indirectly through delegation" by the Board, one of the required elements of the at-pleasure dismissal provision. *See Mackey*, 867 F.2d at 525. Therefore, it has not established that it is entitled to summary judgment on its NBA preemption defense. Its motion for partial summary judgment is denied.

As noted, Sotoodeh also moves for summary judgment on the preemption defense, arguing that Wells Fargo "has failed to demonstrate any evidence that [Sotoodeh] was appointed by the Bank's Board." Pl.'s Mot. 27. He cites evidence that Stevens appointed him to his last position, and notes that Stevens was not a member of the Board. He contends that Wells Fargo did not produce any "source of authority empowering Stevens to appoint him." *Id*. at 11. Wells Fargo responds that its "bylaws delegated to the heads of lines of business, like Ms. Mack, the authority to hire other officers or to delegate that authority to others within her supervision." Def.'s Opp'n 18. This argument is not persuasive for the same reasons discussed above—namely, that Wells Fargo failed to submit evidence that its Director of Human Resources designated Mack as the "head of a business or staff group" or that Mack delegated authority to Stevens to appoint Sotoodeh to his position in compliance with the requirements of Section 4.1 of the bylaws. Accordingly, Wells Fargo has failed to demonstrate a dispute of material fact as to Sotoodeh's appointment.

Wells Fargo must satisfy all four elements of the NBA's at-pleasure dismissal provision to establish that Sotoodeh's claims are preempted. *See Wells Fargo*, 53 Cal. 3d at 1099 (a national bank seeking the benefit of "a broad and unique exemption from state wrongful discharge law by section 24" must "bear the burden of following scrupulously the letter of the statute"). Given Wells Fargo's failure to demonstrate a material dispute of fact as to the appointment element, Sotoodeh's motion for partial summary judgment is granted.[4]

//
//
//
//
//

---

[4] Given the court's conclusion that Wells Fargo has failed to satisfy its burden with respect to the appointment element of the NBA's at-pleasure dismissal provision, it does not reach the parties' arguments regarding whether the Board approved or ratified Sotoodeh's termination.

10

## V.  CONCLUSION

For the foregoing reasons, Sotoodeh's motion for partial summary judgment on NBA preemption is granted.  Wells Fargo's motion for partial summary judgment is denied.  The court will hold a further case management conference on **March 20, 2024 at 1:30 p.m**.  A joint CMC statement is due by **March 13, 2024**.

**IT IS SO ORDERED.**

Dated: February 12, 2024



Donna M. Ryu
Chief Magistrate Judge